[No. F019016. Fifth Dist. Sept. 22, 1993.]

In re TRACY X., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Respondent, v.
KONG L., Defendant and Appellant.

## COUNSEL

Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.

Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

THAXTER, J.—Kong L. appeals from the order terminating her parental rights (Welf. & Inst. Code, § 366.26) as to her daughter Tracy X. She claims the trial court improperly excluded evidence on whether the department of

social services (DSS or the department) complied with Civil Code[1] section 222.35 et seq. regarding racial and ethnic placement preferences in adoption matters. Upon review, it appears section 222.35 et seq. has no bearing on the issues before the juvenile court at a termination hearing.

STATEMENT OF CASE AND FACTS

Tracy X., born February 13, 1991, was adjudged a dependent child of the juvenile court in February 1992. The court had previously found the child was a person described by Welfare and Institutions Code section 300, subdivisions (a), (e) and (g). The mother had stabbed the little girl with a knife when she was five months old, causing serious blood loss and requiring surgery to repair injuries to her liver, spleen and aorta. Due to the severe abuse suffered by the child at her mother's hands, the juvenile court, pursuant to section 361.5, subdivision (b)(5) of the Welfare and Institutions Code, denied the mother and father[2] reunification services. It also set the matter for a permanency planning hearing under Welfare and Institutions Code section 366.26 (hereafter 366.26 hearing).

Initially, DSS recommended a permanent plan of long-term foster care. However, in late spring of 1992, the department's case plan changed to adoption. DSS moved Tracy to a risk-adopt foster home in July 1992. The foster father is Caucasian; the foster mother is Japanese-American. Tracy is Hmong.

In a trial statement[3] prepared for the 366.26 hearing, counsel for the mother notified the court the mother would contest Tracy's placement with "a non-relative and persons of different ethnic identification . . . and [would] also question the Department's apparent failure to comply with the requirements of Civil Code §§ 222.35, et seq. . . ." Consequently, Fresno County Counsel on behalf of DSS filed a written *in limine* motion to exclude any evidence regarding section 222.35 compliance. According to DSS, the cultural makeup of Tracy's current placement was not " 'at issue' " at a parental rights termination hearing. The Fresno County District Attorney's

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

[2] The father's whereabouts were apparently unknown throughout these proceedings. He has not contested the subsequent termination of his rights.

[3] The Fresno County Juvenile Court has apparently initiated a rule requiring counsel's preparation of trial statements in contested matters. These trial statements, also referred to in the record as at-issue memoranda, set forth the procedural posture of a given case, the contested issues, the documentary evidence to be introduced, and the prospective witnesses. We commend the court for requiring counsel to identify in advance of trial those issues which are the subject of debate. The record in this case bears witness to the benefits derived from such a requirement, not just in terms of judicial efficiency but also the level of counsels' preparation and the thoughtful approach taken by all concerned.

Office, on behalf of Tracy, joined in the DSS motion. Counsel for the mother filed written opposition.

After hearing argument on the question, the juvenile court granted the *in limine* motion. The mother in turn submitted the matter on the social worker's reports. The juvenile court found by clear and convincing evidence that Tracy was adoptable and would likely be adopted if parental rights were terminated. In this regard the court noted Tracy's present care providers were "strongly desirous" of adopting her and the couple had been approved by DSS. The court also found none of the factors existed under Welfare and Institutions Code section 366.26, subdivision (c)(1) which would make termination detrimental to the child. Accordingly, the court declared the child free from the custody and control of her mother and father.

The mother filed a timely notice of appeal.

DISCUSSION

■ Whenever a child is being considered for adoption and relative placement is not possible, placement with a family of the same race or ethnic group as the child is preferred. (§ 222.35, subd. (b).) In light of this statutory preference, the mother contends evidence concerning the department's efforts to find Tracy an adoptive home pursuant to section 222.35 is relevant in determining at a 366.26 hearing whether the child is adoptable. The mother concedes there is no case law which applies section 222.35 to a 366.26 hearing.

Section 222.35 provides:

"Whenever a child is being considered for adoption, the following order of placement preferences regarding racial background or ethnic identification shall be used, subject to the provisions of this section, in determining the adoptive setting in which the child should be placed:

"(a) In the home of a relative.

"(b) If a relative is not available, or if placement with available relatives is not in the child's best interest, with an adoptive family with the same racial background or ethnic identification as the child. If the child has a mixed racial or ethnic background, placement shall be made with a family of the racial or ethnic group with which the child has the more significant contacts.

"(c) If placement cannot be made under the rules set forth in this section within 90 days from the time the child is relinquished for adoption or has

been declared free from parental custody or control, the child is free for adoption with a family of a different racial background or ethnic identification where there is evidence of sensitivity to the child's race, ethnicity, and culture. The child's religious background shall also be considered in determining an appropriate placement. A child may not be free for adoption with a family of a different racial background or ethnic identification pursuant to this subdivision however, unless it can be documented that a diligent search meeting the requirements of Section 222.37 for a family meeting the placement criteria has been accomplished."

Shortly after the mother filed her appellate brief, this court published its decision in *In re Roderick U.* (1993) 14 Cal.App.4th 1543 [18 Cal.Rptr.2d 555]. The parents in *Roderick U.* had argued evidence that a Caucasian family wanted to adopt the parents' African-American son was insufficient proof that he was likely to be adopted. (*Id.* at p. 1548.) While this court could find substantial evidence of the child's adoptability, we also observed: "Arguably . . . parents in a dependency proceeding cannot look to these preference statutes [sections 222.35-222.37] in arguing the adoptability issue." (*Id.* at p. 1549.)

In this regard, we relied on section 222.38 which states: "Sections 222.35 to 222.37, inclusive, shall be applicable only in determining the placement of a child who has been relinquished for adoption or has been declared free from the custody and control of the parents."[4]

The mother in the present case overlooks the language of section 222.38. The simple answer to her appellate issue is the juvenile court properly

---

[4]Sections 222.36 and 222.37 provide respectively:

"A determination of good cause not to follow the rules set forth in Section 222.35 may be based on one or more of the following considerations:

"(a) Request of the parent or parents.

"(b) The extraordinary physical or emotional needs of the child.

"(c) The child is legally free for adoption for a period exceeding 90 days during which a diligent search was conducted, and no family meeting the placement preference criteria is available for placement. Documentation shall be necessary in order to make a finding of good cause under this section.

"(d) Application of these rules would not be in the best interests of the child." (§ 222.36.)

"Every public or private agency shall maintain records for the placement of each child to show that a diligent search has been conducted for families meeting the criteria of Section 222.35, and in accordance with diligent search rules which shall be adopted by the department. In conducting a diligent search, each agency shall use all appropriate resources, as necessary, in a directed effort to recruit a family meeting the placement preference criteria through (a) the use of all appropriate intra-agency and interagency, state, regional, and national exchanges and listing books, (b) child-specific recruitment in electronic and printed media coverage, and (c) the use of agency contacts with parent groups to advocate for specific waiting children.

"Records of agencies maintained pursuant to this section may be reviewed upon request by the state department." (§ 222.37.)

excluded evidence regarding section 222.35 compliance at the 366.26 hearing. Under the plain language of section 222.38, section 222.35 does not apply until *after* parental rights have been terminated. The Legislature has implicitly determined in section 222.38 that an agency's compliance with sections 222.35 through 222.37 is not an issue to be resolved at the 366.26 hearing. In fact, it has created a system in which a dependent child's adoption placement may be wholly irrelevant at a termination hearing. The juvenile court at a 366.26 hearing is empowered to find it likely a child will be adopted and terminate the natural parents' rights even if there is no identified or available prospective adoptive parent. (Welf. & Inst. Code, § 366.26, subd. (c)(1), (3).)

The mother also claims a due process right to advocate for an adoption placement as racially or ethnically similar to the minor's birth family as possible. She cites no authority for this claim other than the fundamental right to parent (*Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]). Her parenting right is not at stake, however, when the question of adoption placement arises. At that point, her parenting rights have already been terminated. Moreover, the placement preference statutes exist to advance the child's best interests (see § 222.36, subd. (d)), not the biological parent's interest.

Finally, the mother complains that if she could not raise section 222.35 compliance at the 366.26 hearing, no one else has an interest to ensure that the department will comply with the statutory preferences. Her argument, however, is not cognizable on this appeal since section 222.35 compliance is not at issue in these proceedings. Moreover, her concern is premised on nothing more than unwarranted speculation that neither the department nor the court will proceed according to sections 222.35 through 222.37. It appears the mother's concern is better directed to the Legislature.

We note in passing that in many instances parents whose rights may be ultimately terminated are not without recourse respecting our state's racial and ethnic placement preference criteria. Many adoptive placements are former foster care placements; in other words, as in the present case, a child's foster parents will often become the child's prospective adoptive parents. There is a preference hierarchy, virtually identical to sections 222.35 through 222.37, which applies to foster care placements. Sections 275 through 275.2 provide:

"With full consideration for the proximity of the natural parents to the placement so as to facilitate visitation and family reunification, whenever a child is being considered for placement in foster care, the following order of

placement preference regarding racial or ethnic background shall be used, except where application of these priorities would not be in the best interests of the child:

"(a) Placement shall, if possible, be made in the home of a relative. Diligent efforts shall be made to locate an appropriate relative. Before any child may be placed in long-term foster care, each relative whose name has been submitted to the agency as a possible caretaker, either by himself or herself or by other persons, shall be evaluated as an appropriate placement resource.

"(b) If a relative is not available after 30 days from the time the child comes under the jurisdiction of the juvenile court, or if placement with available relatives is not in the child's best interest, placement shall be made with a foster parent with the same racial or ethnic identification as the child. If the child has a mixed racial or ethnic background, placement shall be made with a family of the racial or ethnic group with which the child has the more significant contacts.

"(c) If placement cannot be made under the rules set forth herein, placement shall be made with a family of a different racial background or ethnic identification where there is evidence of sensitivity to the child's race, ethnicity, and culture. The child's religious background shall also be considered in determining an appropriate placement.

"(d) Nothing in this section shall be construed as precluding either of the following:

"(1) A search for an appropriate relative being conducted simultaneously with a search for a foster family.

"(2) The child remaining at the same placement site while the search for an appropriate relative or foster family is being conducted." (§ 275.)

"A determination of good cause not to follow the rules set forth in Section 275 may be based on one or more of the following considerations:

"(a) Request of the parent or parents.

"(b) The extraordinary physical or emotional needs of the child.

"(c) The unavailability of suitable parents for placement after a diligent search has been completed for families meeting the preference criteria." (§ 275.1.)

"Every public or private agency is encouraged to maintain records for the placement of each child to show that a diligent search has been conducted for families meeting the criteria of this title, and in accordance with preference of placement criteria established by the State Department of Social Services.

"Records of agencies maintained pursuant to this section may be reviewd upon request by the state department." (§ 275.2.) Thus, a parent who desires that his or her child be placed with foster parents with the same racial or ethnic background as the child may raise the issue of section 275 compliance in the dependency proceedings. Notably, the mother never challenged Tracy's foster care placement with the couple who have since asked to adopt the child.

## DISPOSITION

The judgment ("Orders Under Section 366.26 of the Welfare and Institutions Code") is affirmed.

Martin, Acting P. J., and Franson, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.